**COUNTY OF ROCKLAND, NEW YORK, et al., Petitioner**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

Nos. 07–1363, 07–1437, 07–1493 to 07–1499, 08–1105 to 08–1107.

United States Court of Appeals, District of Columbia Circuit.

June 10, 2009.

Rehearing En Banc Denied Aug. 19, 2009.

Before: SENTELLE, Chief Judge, GINSBURG, Circuit Judge, and RANDOLPH, Senior Circuit Judge.

### JUDGMENT

These petitions for review were considered on the record from the Federal Aviation Administration and on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petitions for review be dismissed insofar as the petitioners forfeited some of their challenges and otherwise denied for the reasons given in the attached memorandum opinion.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

### MEMORANDUM OPINION

In a corrected Record of Decision (ROD) issued September 28, 2007 the Federal Aviation Administration adopted a multi-phase plan to modernize the New York/New Jersey/Philadelphia Metropolitan Area airspace. The redesign shifts flight paths, reallocates management of particular sectors of airspace amongst air traffic control facilities, and adopts new flight procedures. The changes will, the FAA determined, reduce delay and increase operational efficiency, without imposing significant noise effects upon, or increasing air pollution in, the states below the NY/NJ/PHL airspace. The petitioners object to the FAA's analysis of environmental impacts as procedurally invalid and substantively unreasonable, in violation of the National Environmental Policy Act (NEPA), the Department of Transportation Act (DOT Act), and the Clean Air Act (CAA). We dismiss the petitions for review insofar as the petitioners forfeited some of their challenges and deny the rest of the petitions because the FAA's environmental impact analysis was procedurally sound and substantively reasonable.

### I. NEPA

NEPA directs a federal agency to "include in every ... report on proposals for ... major Federal actions significantly affecting the quality of the human environment, a detailed statement ... on ... the environmental impact of the proposed action," 42 U.S.C. § 4332(2)(C)(i), known as an environmental impact statement (EIS). We review the FAA's compliance with NEPA for the most part under the arbitrary and capricious standard of the Administrative Procedure Act, asking whether the agency provided "the necessary process" and took a " 'hard look' at environmental consequences." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989); *see Nevada v. Dep't of Energy,* 457 F.3d 78, 93 (D.C.Cir.2006). We address only a few of the petitioners' many objections to the EIS. None of the petitioners' objections amounts to a significant procedural deficiency and none indicates that the FAA failed to take a "hard look" at the environmental impacts of its action. *See Cmtys. Against Runway Expansion, Inc. v. FAA,* 355 F.3d 678, 685 (D.C.Cir.2004).

■ The petitioners first attack the FAA's forecast of future traffic. The agency's forecast is entitled to "even more deference" than this court gives "under the highly deferential arbitrary and capricious standard." *St. John's United Church of Christ v. FAA,* 550 F.3d 1168, 1172 (D.C.Cir.2008). The petitioners argue the FAA failed to consider reasonably foreseeable indirect effects of the redesign, as required by 42 U.S.C. § 4332(2)(C)(ii) and 40 C.F.R. § 1508.8(b), because the agency refused to adjust its forecast for the growth-inducing effect of reductions in

flight delay. In the FAA's experience, however, airspace redesign, which increases throughput but not airport capacity, does not induce significant enough additional demand to warrant modeling. We have deferred to similar reasoning before, and we do so again here. *See City of Olmsted Falls v. FAA,* 292 F.3d 261, 272 (D.C.Cir.2002). The petitioners insist the FAA's reliance upon its experience ran counter to the evidence before it, but they point to statements of the agency that show nothing more than the possibility of another reasonable view; that is not enough to discharge their burden to show the FAA was arbitrary, *see City of Los Angeles v. FAA,* 138 F.3d 806, 808 (9th Cir.1998).

Next, the petitioners change course, contending that once the FAA recognized it had overestimated future traffic, particularly at Newark International Airport, it should have adjusted the baseline for its environmental analysis. The FAA, however, took the requisite hard look by "creating its models with the best information available when it began its analysis and then checking the assumptions of those models as new information became available." *Village of Bensenville v. FAA,* 457 F.3d 52, 71 (D.C.Cir.2006). Although the agency found a 14% gap between its forecast of 2006 traffic on the average annual day at Newark and actual traffic there on the average day in 2005, it also found the overall forecast was well within the 10% margin of acceptable error the agency employs when deciding whether a forecast is useful for decision making. The FAA concluded the forecast, although not perfect, still "capture[d] the general flow and magnitude of the traffic in a way that can show differences among the proposed alternatives."

The petitioners' chief complaint is that the FAA's explanation is unreasonable because whether the redesign will reduce delay turns upon the forecast at Newark. As the FAA explains, however, although Newark will experience the greatest reduction in "block time"—which the petitioners erroneously treat as a reduction in delay—all the major airports in the region will experience reductions in delay. The petitioners' focus upon one data point for Newark is therefore based upon their having misunderstood the record before the agency. Given the substantial deference we owe the agency, *see St. John's,* 550 F.3d at 1172, we cannot say its reassessment of the forecast was arbitrary and capricious.

In their final challenge to the FAA's traffic forecast, the petitioners argue the FAA should have forecast the impact of future traffic in 2012 and in 2017 because the agency "usually" forecasts such impacts for the "year of anticipated project implementation and [for] 5 to 10 years after implementation." FAA Order 1050.1E, Environmental Impacts: Policies and Procedures app.A § 14.4g(2) (Mar. 20, 2006). The FAA, however, need only select an "appropriate" timeframe for a forecast, *id.,* and the petitioners have not given us a reason to think the FAA, when it began the analysis in 2001, selected an inappropriate timeframe; nor have they shown that, once the FAA pushed back the date of implementation, it was arbitrary not to restart the analysis. The probability that air traffic will increase after 2011 does not show the FAA's decision to adopt the redesign with environmental mitigation measures was based upon an insufficient appreciation of the impact of the project.

■ The petitioners next complain the FAA should have produced a supplemental draft EIS (DEIS) because, they assert, the agency substantially changed the project at the eleventh hour when, after having issued the DEIS, it designed a noise miti-

gation measure routing flights over part of the Rockefeller State Park Preserve in New York. *See* 40 C.F.R. § 1502.9(c) (requiring supplemental DEIS whenever agency "makes substantial changes in the proposed action that are relevant to environmental concerns"). As the FAA explains, however, it essentially readopted the pre-redesign flight path over the park, the noise impact of which had already been the subject of public comment when the agency assessed the no-action alternative. We defer to that reasonable explanation why no supplemental analysis was necessary. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374–77, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989).

One more NEPA challenge deserves mention: The petitioners argue the FAA failed to honor a commitment it made in the final EIS (FEIS) to institute a compliance monitoring program as part of its noise mitigation plan. In responding to a comment upon the Noise Mitigation Report, the FAA briefly stated the agency would adopt a compliance monitoring plan in the ROD. The FAA, however, never developed a detailed monitoring program as part of the FEIS, or specified one in its ROD, and the agency's stray comment was not a binding commitment to adopt such a program. Absent a firm commitment to such monitoring, neither NEPA nor the agency's regulations require it. *See* 40 C.F.R. § 1505.3 ("Mitigation ... and other conditions established in the [EIS] or during its review and committed as part of the decision shall be implemented"); Order 1050.1E § 512b ("Any mitigation measure that was made a condition of the approval of the FEIS must be included in the ROD"); *cf. Robertson*, 490 U.S. at 352, 109 S.Ct. 1835 (NEPA does not impose "substantive requirement that a complete mitigation plan be actually formulated and adopted" before agency can act).

## II. DOT Act

Section 4(f) of the DOT Act prohibits the Secretary of Transportation from adopting a "project ... requiring the use ... of a public park ... or land of an historic site" unless "there is no prudent and feasible alternative to using that land" and the Secretary has done "all possible planning to minimize harm to the park ... or historic site." 49 U.S.C. § 303(c). The prohibition of the Act extends to constructive use, including "noise that is inconsistent with a parcel of land's continuing to serve its recreational, refuge, or historical purpose." *City of Grapevine v. DOT*, 17 F.3d 1502, 1507 (D.C.Cir.1994). The FAA applied the guidelines contained in 14 C.F.R. pt. 150 and, as required by Order 1050.1E app.A § 6.2i, considered " [a]dditional factors" beyond the guidelines when assessing "the significance of noise impacts on noise sensitive areas." Based upon that analysis, the FAA concluded the redesign would not result in the constructive use of any § 4(f) property.

The petitioners argue the FAA's process of screening for potentially affected § 4(f) properties was procedurally defective and substantively inadequate because the agency did not consult all state and local park officials and did not give individualized attention to at least 236 properties the petitioners say may be affected. We dismiss this challenge as forfeit because no one raised it during the administrative proceeding. *See Olmsted Falls*, 292 F.3d at 274.

With respect to properties that were the subjects of public comments, the petitioners argue the FAA violated § 4(f) and Order 1050.1E (1) by failing to conduct individualized analyses of certain properties they say are noise-sensitive and (2) by improperly analyzing noise impacts at another property. Because, however, the pe-

titioners have failed to impugn the agency's screening methodology or to offer "a serious argument" that the FAA failed adequately to consider any property that may suffer a constructive use, we defer to the agency, *see Town of Cave Creek v. FAA,* 325 F.3d 320, 333 (D.C.Cir.2003).

The petitioners also argue the FAA violated § 4(f) and 40 C.F.R. § 1506.6 by delaying additional noise impact analyses for several parks, which analyses were then summarized in, and appended to, the ROD without an opportunity for further public comment. Section 4(f) does not require such an additional process, however, and 40 C.F.R. § 1506.6(a) merely directs the agency generally to "[m]ake diligent efforts to involve the public in preparing and implementing [its] NEPA procedures." As indicated by the FAA's extensive public outreach effort and its thorough process of environmental review, the agency complied with the regulation. The petitioners cite *Am. Bird Conservancy, Inc. v. FCC,* 516 F.3d 1027, 1035 (D.C.Cir.2008), but that case is inapposite because in appending additional analyses to the ROD the FAA did not "evade" implementation of any FAA regulation requiring additional notice or public comment.

## III.  Clean Air Act

■ The CAA requires a federal agency to determine whether a proposed federal project will conform to an applicable state implementation plan (SIP) adopted to achieve the Environmental Protection Agency's national ambient air quality standards (NAAQS). 42 U.S.C. § 7506(c). Pursuant to § 7506(c)(4)(A), the EPA has promulgated a General Conformity Rule that relieves a federal agency of the obligation to conduct a full-scale conformity determination if the project is not "regionally significant," 40 C.F.R. § 93.153(i)–(j), and if the project either will result in at

most *de minimis* emissions of criteria pollutants, *id.* § 93.153(b)–(c), or comes within one of the categories in the agency's list of actions that are presumed to conform to any SIP, *id.* § 93.153(f)–(h). Because we hold the FAA reasonably concluded the redesign is exempt from a conformity determination under the *de minimis* exemption, we need not and do not reach the petitioners' challenge to the agency's having relied, in the alternative, upon its presumed-to-conform list, *see* Federal Presumed to Conform Actions Under General Conformity, 72 Fed.Reg. 41,565, 41,578 (2007).

In applying the *de minimis* exemption the FAA did not directly calculate the level of emissions resulting from the project, but rather relied upon a fuel burn analysis that showed the redesign will "reduce fuel consumption by just over 194 metric tons per day" in the study area. Because reducing fuel consumption reduces aircraft emissions, the FAA concluded the redesign will reduce emissions in the study area. As the agency sensibly reasoned, a project that *decreases* emissions cannot cause a more than *de minimis* (if it could cause any) *increase* in emissions or be otherwise regionally significant; therefore, it did not conduct a conformity determination.

The petitioners' main contention is that, notwithstanding the result of the fuel burn analysis, the FAA had to calculate "the total of direct and indirect emissions" resulting from the project, 40 C.F.R. § 93.153(c)(1), and compare that total to thresholds identified by the EPA, *id.* § 93.153(b); *see also* Order 1050.1E app.A § 2.1c. According to the petitioners, the fuel burn analysis cannot show the redesign will reduce emissions because it does not account for the possibilities that the redesign will increase (a) emissions from airport ground equipment and (b) emissions of some pollutants due to changes in

aircraft speed. Therefore, the petitioners argue, only by preparing an inventory of emissions could the FAA determine that emissions will not be significantly increased by the redesign.

Assuming the agency erred when it failed to inventory emissions, the petitioners still have failed to identify any way in which the error was or might have been harmful. *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error" when court reviews agency action). As the FAA explains, by reducing idling and taxiing, and thus reducing the time aircraft run their engines at or near ground level, the redesign will reduce the emissions most likely to have an effect upon local air quality. The agency did not need to quantify the reduction in order to conclude the redesign was exempt from a conformity determination. We therefore deny the petitions for review with respect to the petitioners' core challenge to the

fuel burn analysis. *See Olmsted Falls*, 292 F.3d at 271 (even if FAA erred, "the burden is on petitioners to demonstrate that [the FAA's] ultimate conclusions are unreasonable").*

\* \* \*

We have considered and found no merit in the petitioners' other arguments. Based upon the foregoing opinion, the petitions for review are dismissed in part and denied in part. The pending motions for judicial notice and for supplementation of the administrative record are dismissed as moot.

*So ordered.*

---

* The petitioners also argue the fuel burn analysis failed to show the redesign will reduce emissions in all relevant nonattainment and maintenance areas, *see* 40 C.F.R. § 93.153(b), but that argument is not properly before us because the petitioners failed to raise it until their reply brief, *see Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1181 (D.C.Cir. 2000).